UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 23-CR-

JACK DALY,

Defendant.

---

**PLEA AGREEMENT**

---

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, Kevin Knight and Benjamin Taibleson, Assistant United States Attorneys, and the defendant, Jack Daly, individually and by attorneys Jason Cowley and Matthew Krueger, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

**THE CHARGE**

2. The defendant has been charged in a single-count information, which alleges a violation of Title 18, United States Code, Section 371.

3. The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorneys.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the count set forth in full in the information, which is attached hereto as Attachment B.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in Attachment B. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts described in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

**PENALTIES**

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 5 years and $250,000. This count also carries a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorneys.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiring to violate the laws of the United States, as set forth in the accompanying information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the conspiracy as charged existed;
> Second, the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy; and,
> Third, one of the conspirators committed an overt act in an effort to advance the goals of the conspiracy.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in Attachment B. The defendant acknowledges and agrees that his attorneys in turn have discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

**Relevant Conduct**

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

**Base Offense Level**

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is six (6) under Sentencing Guidelines Manual §§ 2B1.1(a)(2), 2X1.1(a).

**Specific Offense Characteristics**

16. The government agrees to recommend to the sentencing court that the loss amount, for purposes of Sentencing Guidelines Manual §2B1.1(b)(1), should be determined to correspond to donations solicited by the Draft PAC on or after July 22, 2017 or received by the Draft PAC by virtue of those solicitations.

17. The parties agree that they will jointly recommend to the sentencing court that a 2-level increase to the offense level shall apply pursuant to Sentencing Guidelines Manual § 2B1.1(b)(2)(A)(i) because the offense charged in the information involved 10 or more victims.

**Other Sentencing Guidelines Enhancements**

18. The government agrees to take no position on whether any other offense level enhancements, including specific offense enhancements or any other adjustment enhancements set forth in any provision of the Sentencing Guidelines Manual, apply.

**Acceptance of Responsibility**

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence no higher than the low-end of the defendant's ultimate sentencing guideline range, as determined by the court, or 30 months, whichever is lower. The parties acknowledge and agree that the defendant is free to recommend whatever sentence he believes is appropriate, and that the defendant shall likely seek a probationary sentence.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP, whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest; cooperate in the liquidation of any such assets; and participate in an asset deposition.

## Restitution

26. The defendant agrees to pay restitution as ordered by the Court. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

27. The parties acknowledge and understand that the government will recommend that the amount of restitution owed should be determined to correspond to donations received by the Draft PAC by virtue of solicitations sent on or after July 22, 2017. The government agrees to recommend that the amount owed by the defendant in restitution shall be joint and several with any other persons who are convicted for the same course of conduct charged in the information.

## Forfeiture

28. The parties acknowledge and understand that the government will recommend that for purposes of any order of forfeiture entered by the court, the proceeds of the offense should be determined based on the total value of donations received by the Draft PAC by virtue of solicitations sent on or after July 22, 2017, and the value of the identities and contact information of potential donors obtained by virtue of these solicitations.

## Fine

29. The parties acknowledge and understand that the government reserves the right to recommend to the sentencing court that a fine of up to $250,000 be imposed against the

defendant. The parties acknowledge and understand that the defendant will not join in any recommendation the government may make with respect to a fine.

**Special Assessment**

30. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

**DEFENDANT'S WAIVER OF RIGHTS**

31. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorneys would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and would have the right to cross-examine those witnesses. In turn the defendant

could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorneys have explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

36. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations or venue.

**Further Civil or Administrative Action**

37. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorneys and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the

United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

38. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40. The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

41. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

**Further Action by Internal Revenue Service**

42. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

**EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

43. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorneys have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

44. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorneys have reviewed every part of this agreement with me and have advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorneys and I am satisfied that my attorneys have provided effective assistance of counsel.

Date: April 27, 2023

Jack Williams Daly
JACK DALY
Defendant

We are the defendants attorneys. We carefully have reviewed every part of this agreement with the defendant. To our knowledge, our client's decision to enter into this agreement is an informed and voluntary one.

Date: April 27, 2023

JASON COWLEY
MATTHEW KRUEGER
Attorneys for Defendant

For the United States of America:

Date: Apr. 27, 2023

GREGORY J. HAANSTAD
United States Attorney

Date: 4/27/'23

KEVIN KNIGHT
BENJAMIN TAIBLESON
Assistant United States Attorneys

**Attachment A**

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. These facts are based upon information provided by a confidential informant, the anticipated testimony of citizen witnesses and law enforcement agents, electronic evidence, and records obtained via grand jury subpoenas. The information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

Relevant Persons

Defendant Jack DALY is a lawyer by training and has political fundraising experience. N.P. is also a lawyer by training with political fundraising experience. David Clarke ("Clarke") was the Sheriff of Milwaukee County from approximately March 2002 to approximately August 2017.

The Draft PAC

On January 19, 2017, DALY registered the Sheriff David Clarke for U.S. Senate (Official Draft Campaign) Super PAC (the "Draft PAC") with the FEC by submitting a Form 1, Statement of Organization. In that submission, DALY identified himself as the Draft PAC's Chairman, Treasurer, and Custodian of Records.

By February 2017, DALY had (1) opened bank accounts in the name of the Draft PAC that he controlled; (2) set up a website soliciting contributions for the Draft PAC; (3) advertised the existence of the Draft PAC online, and (4) begun soliciting contributions, via direct mail and email.

Contemporaneous email correspondence reflects that N.P assisted DALY in the Draft PAC's activities by (1) discussing the Draft PAC's administrative functions with DALY; (2) strategizing with DALY regarding how to best raise money on behalf of the Draft PAC; and (3) drafting solicitations the Draft PAC would send to potential donors.

Over the relevant period, the Draft PAC raised over $1.6 million. Most of these donations were spent on fundraising activities.

Relevant Events Surrounding Clarke's Intention to Run for Senate

On July 21, 2017, Clarke gave a public radio interview to V.M. and stated: "I want to put this to a rest because it's becoming a distraction. No, I'm not running for Senate." Clarke elaborated: "Every time I turn around, I'm explaining to people, 'No, that's not going to happen, hang onto your money.'" Clarke was asked about the Draft PAC,

responding, "It's a scam PAC really." Clarke concluded: "No one needs to donate to me for U.S. Senate because I am not running."

On July 22, 2017, DALY and N.P. emailed one another regarding Clarke's announcement. The subject line of this email from DALY to N.P. was: "OMG."

Relevant Solicitations

On August 2, 2017, the Draft PAC sent an additional solicitation to potential donors. This August 2 solicitation indicated Clarke "will" throw "his hat in the ring." This solicitation omitted any reference to Clarke's statements disclaiming an interest in a campaign for the U.S. Senate.

On September 2, 2017, the Draft PAC sent a solicitation for funds that suggested that Clarke's "resignation will at long last free him to prepare for a U.S. Senate campaign in earnest — something he was unwilling to do while still taking taxpayer dollars to serve Milwaukee County. That means it's showtime, folks!" This solicitation omitted any reference to Clarke's statements disclaiming an interest in a campaign for the U.S. Senate.

Statements to Clarke

C.P., an advisor to Clarke, received the Draft PAC's September 2 solicitation and forwarded the message to Clarke himself. The subject line of C.P.'s email is, "Jack Daly is at it again - he's collecting contributions."

That same day, Clarke wrote to DALY: "Jack what is this? You are well aware that I am NOT running for US Senate. I announced that a month ago and you were contacted by a local newspaper writer about my announcement that I was NOT running. Do NOT raise anymore money using my name."

N.P. then drafted a response intended for Clarke on DALY's behalf. N.P.'s draft included false representations and read, in part: "I stopped putting my money into the draft PAC the day you made reference to a 'scam pac' on Vicky's radio show (a comment that I must confess caught me very much by surprise, and put me in a very awkward place). I also stepped back as the pac's Treasurer and frankly assumed the new crew would be more or less winding things down . . . . I of course do have personal connections with the new Treasurer and I will see what I can do." The subject line of this email was: "Clarke Email Response - Fill in the bad guys." DALY then sent an email largely derived from N.P.'s draft to Clarke.

Statements to the FEC

On or about September 6, 2017, N.P. and DALY, during a phone call with Z.Z., told Z.Z. that he would receive a "title" with the Draft PAC if they could use Z.Z.'s name in connection with the Draft PAC. Z.Z. agreed to their proposal.

N.P. and DALY then established an email account, designed to appear associated with Z.Z. N.P.'s email address and phone number are listed with Google as the associated "account recovery" email and phone number.

On September 7, 2017, the Draft PAC submitted a new FEC Form 1, Statement of Organization, to the FEC. This FEC Form 1 claimed that Z.Z. was the Draft PAC's Treasurer, replacing DALY. In fact, as DALY knew, Z.Z. was not performing any duties as Treasurer or undertaking any responsibilities as Treasurer. Such responsibilities had not been delegated to, nor from, Z.Z. DALY continued to serve the same Treasurer functions on behalf of the Draft PAC that he did before Z.Z. was listed as Treasurer. This FEC Form 1 was also post-dated, with a purported effective date of August 28, 2017. DALY was logged in to the FEC's website the evening this FEC Form 1 was submitted.

Through October 2022, the Draft PAC continued to file submissions with the FEC that represented that Z.Z. was the Draft PAC's Treasurer.